## COMPLAINT FOR MONETARY DAMAGES

Plaintiff hereby alleges that:

1. Plaintiff is an attorney licensed to do business in the State of Maryland with a principal place of business located at 6188 Oxon Hill Road in Oxon Hill, Maryland.

2. The Thompson Corporation ("Thompson") is an out-of-state corporation during business in the State of Maryland with corporate headquarters located at 610 Opperman Drive in Eagen, Minnesota. One of the goods and services offered by Thompson is an online legal research system known as Westlaw.

3. CISCO, Inc. ("CISCO") is an out-of-state corporation doing business in the State of Maryland with corporate headquarters located at 1702 Townhurst Drive in Houston, Texas.

4. On or about January 28, 2004, plaintiff and Thompson entered into a contract by which plaintiff, who was assigned Account No. 1000147097-0010, would pay a monthly charge beginning at approximately $390.41 for a Westlaw subscription described as "WL PRO ALL CASES AND STATUTES-VA BANDED," as reflected in a welcome e-mail from Thompson (Exhibit A).

5. After several years, plaintiff decided to end his Westlaw subscription, largely because plaintiff became weary of Thompson's ceaseless sales calls made to plaintiff for the purpose of persuading plaintiff to expand his Westlaw subscription.

6. Consequently, on or about September 27, 2006, believing that any term contract had long since expired, plaintiff sent Thompson an e-mail (Exhibit B) stating that he wished to end his subscription effective immediately and specifically asking that Thompson not contact plaintiff to discuss plaintiff's decision.

7. In a reply e-mail that same date (Exhibit C), Thompson acknowledged receipt of plaintiff's e-mail but further stated that plaintiff was under contract through February 28, 2007, and that a Thompson representative would be contacting plaintiff despite plaintiff's conspicuous notice that he did not wish to discuss the matter further.

7. By way of an e-mail transmitted on or about September 28, 2006 (Exhibit D), replying to the September 26 e-mail from Thompson, plaintiff advised Thompson that plaintiff believed that the original contract had expired, asked Thompson to send plaintiff evidence that plaintiff had signed an extension of this contract, and again told Thompson not to call plaintiff.

8. Thompson ignored this e-mail, both in that Thompson failed to provide any evidence to support its claim of an extended contract, and in that Thompson persisted in making dozens of telephone calls to plaintiff in an attempt to convince plaintiff to extend his subscription. Generally plaintiff avoided answering these calls, whereupon Thompson would on some occasions leave a message and on other occasions hang up. Plaintiff found these unwanted calls extremely disturbing and stressful.

9. Although Thompson never offered any proof to document its claim that plaintiff remained bound for a three-year contract, plaintiff nonetheless decided to pay for Westlaw services through the end of January 2007, in the absence of evidence by which plaintiff could establish an earlier termination date.

10. However, Thompson continued to call plaintiff inquiring as to whether or not he wished to extend his contract, as well as to send regular solicitations such as the undated letter attached hereto (Exhibit E). Plaintiff once more attempted to stop this conduct both through an e-mail transmitted on January 30, 2007 (Exhibit F), and a letter sent via certified mail and facsimile on January 31, 2007 (Exhibit G).

11. Despite the very strong language in the January 30 e-mail, receipt of which was acknowledged by Thompson in a reply dated February 1, 2007 (Exhibit G), as well as the January 31 letter, Thompson continued to send solicitations to plaintiff asking that he extend his contract beyond the disputed date of February 28, 2007, including a letter received by plaintiff on March 5, 2007 (Exhibit H).

12. When Thompson finally realized that it could not harass plaintiff into extending his Westlaw subscription, Thompson began to send letters and to call plaintiff demanding payment in the amount of $390.41 for the use of Westlaw during February 2007, the last of which letters was a "Final Notice" dated May 11, 2007 (Exhibit I).

13. When engaging in these communications, Thompson acted strictly for the purpose of harassing plaintiff, since Thompson well knew that plaintiff denied owing any payments for the period in question and that plaintiff had ceased any and all use of Westlaw after January 31, 2007.

13. Having failed to harass plaintiff into paying on an expired contract using its own stationary, Thompson referred the disputed debt in the amount of $390.41 to a collection company, namely, CISCO. On its official website, CISCO holds itself out as a company with great expertise in the area of debt collection.

14. Beginning on some date unknown to plaintiff, but in or around early July 2007, and continuing up to the present date, CISCO has engaged in extensive attempts to collect on the disputed charge, through at least three letters and daily telephone calls, including most recently a voice mail message left on or about August 24, 2007, by a CISCO representative identifying herself as Cynthia Green.

15. Despite its alleged expertise in collection matters, CISCO has repeatedly violated the Fair Debt Collection Practices Act ("FDCPA"), the main federal statute governing the conduct of debt collectors. CISCO's violations include the following acts:

    A. Refusing to stop communications after receiving actual and constructive notice that plaintiff has stated in writing that he disputes the charge, in violation of § 805.

    B. Knowingly and deliberately engaging in harassment of plaintiff through repeated telephone calls after being specifically advised by the plaintiff that plaintiff considered these calls to be harassing, in violation of § 806.

C. Making false and misleading representations, in violation of § 807, including but not limited to the following representations:

(i) claiming in a letter dated July 12, 2007 (Exhibit J), that to avoid a lawsuit "resulting in additional costs to you," plaintiff would be required to send CISCO a check within five days, where no such lawsuit was ever filed or contemplated within the period stated;

(ii) claiming in a letter dated July 23, 2007 (Exhibit K), that CISCO intended to recommend that its client refer this matter to an attorney and, inconsistently, that CISCO had already consulted an attorney who was an expert in collection cases, which attorney had advised CISCO as to all the adverse consequences that would flow from plaintiff's failure to pay the debt; and

(iii) claiming in a letter dated August 3, 2007 (Exhibit L), that CISCO had recommended to its client that this matter be turned over to a Maryland attorney for further action, which representation was contradicted by the fact that CISCO continued making daily and near-daily calls to the undersigned counsel for three weeks after the alleged referral to counsel for legal action.

D. Failing to validate the alleged debt in the manner required by § 809.

COUNT ONE *(Harassment/Breach of Privacy)*

16. Plaintiff hereby incorporates as though fully set forth herein paragraphs 1 through 15 of the complaint.

17. At all times relevant hereto, Thompson and CISCO had a duty establish both under common law and under Maryland criminal statutes not to use the telephone to harass persons in the the State of Maryland and not to invade the privacy of persons for commercial gain. Thompson and CISCO maliciously breached this duty. As a direct and proximate result of this breach, plaintiff suffered a major disruption of his business, was compelled to devote numerous hours preparing letters and e-mails for the purpose of stopping Thompson's and CISCO's harassment, and suffered serious emotional strain.

WHEREFORE, plaintiff demands payment from Thompson and CISCO, jointly and severally, in the amount of $2,500.00 for compensatory damages and $5,000.00 for punitive damages, plus reasonable attorney fees and the costs of court.

COUNT TWO *(Fair Debt Collection Practices Act)*

18. Plaintiff hereby incorporates as though fully set forth herein paragraphs 1 through 17 of the complaint.

19. At all times relevant hereto, plaintiff was a "consumer" and CISCO was a "debt collector" as those terms are defined in the FDCPA. CISCO has repeatedly and systematically violated the FDCPA, thereby disputing plaintiff's business and causing plaintiff serious emotional strain.

WHEREFORE, plaintiff demands payment from CISCO in the amount of $2,500.00 for compensatory damages, plus reasonable attorney fees and the costs of court.